**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| EDDIE YAKLIN FORD LINCOLN MERCURY NISSAN INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL NO. 2:15-CV-399 |
| AMERICAN ROAD INSURANCE COMPANY, *et al*, | § § § | |
| Defendants. | § § | |

## <u>ORDER</u>

BE IT REMEMBERED that on this 4th day of August, 2017, this Court considered Defendants American Road Insurance Company and American Road Services Company's (together "American Road") Motion for Summary Judgment, Dkt. No. 34, and Defendant Universal Underwritings Insurance Company's ("UUIC") Motion for Summary Judgment, Dkt. No. 29. For the reasons stated below, the Court grants in parts and denies in part American Road's motion and grants UUIC's motion.

## I.     Background

American Road and UUIC each move for summary judgment against Plaintiff Eddie Yaklin Ford Lincoln Mercury Nissan Inc. ("Yaklin Ford"). UUIC filed its motion on June 6, 2016. *See* UUIC Mot., Dkt. No. 29. American Road filed its motion on June 30, 2016. *See* Am. R. Mot., Dkt. No. 34. Yaklin Ford has responded to both summary judgment motions. *See* Pl.'s Resp. Brs., Dkt. Nos. 33, 45.

Yaklin Ford is an authorized Ford dealership located in Kingsville, Texas. Dkt. No. 45 at ¶ 34. On Saturday, April 6, 2013, Yaklin Ford received a call from a prospective purchaser. *See* Statement and Proof of Loss ("Statement of Loss"), Dkt. No. 35 at APP 21. The caller inquired about purchasing a used 2012 Mercedes Benz

from Yaklin Ford. The salesman with whom the unknown caller spoke instructed the caller to submit an online credit application. Later that day, Yaklin Ford received an online credit application by the name of "Scott Heidenreich," *see* Dkt. No. 35 at APP 24, and inquiry from the prospective purchaser. Statement of Loss, Dkt. No. 35 at APP 21. The online applications are available on a platform called RouteOne which is partly owned by Ford Motor Credit Company ("Ford Motor Credit"), the parent company of American Road. Dkt. No. 45, at ¶¶ 34–35. The Yaklin Ford salesman handling the transaction asked for and received a faxed copy of the customer's driver's license. Statement of Loss, Dkt. No. 35 at APP 21. Yaklin Ford's complaint states that it received "copies" in the plural, but Yaklin Ford's Statement of Loss indicates that the Yaklin Ford salesman handling the transaction received one faxed copy. *Compare* Compl. at 2 *with id.* The name on the driver's license, "Scott Heindreich," did not match the name on the online application, "Scott Heidenreich." Dkt. No. 34 at 8; *compare* Dkt. No. 35 at APP 23 *with* Dkt. No. 35 at APP 24. There were other discrepancies between the applications and the driver's license, such as different zip codes.

From April 6 to April 8, 2013, Yaklin Ford made and received several calls to and from the prospective purchaser. Statement of Loss, Dkt. No. 35 at APP 21. After receiving the credit application, Yaklin Ford sent a finance application to Ford Motor Credit. Processing the finance application involved checking the purchaser's credit. *See* Dkt. No. 34 at 9; Dkt. No. 35-1 at APP 29–30. The credit report score of "Scott Heidenreich" was 844 (which American Road states is a good score). *See* Dkt. No. 34 at 10; Dkt. No. 35-1 at APP 29. The buyer was willing to purchase optional insurance. *Id.* The credit application report flagged several issues as follows:

> TOO MANY INQUIRIES LAST 12 MONTHS
> PROPORTION OF LOAN BALANCES TO LOAN AMOUNTS IS TOO HIGH
> TOO MANY ACCOUNTS WITH BALANCES
> TOO FEW ACCOUNTS CURRENTLY PAID AS AGREED

Dkt. No. 35-1 at APP 29.

The report also contained an identity scan alert, which reads:

> INQUIRY IS NOT ASSOCIATED WITH THIS CONSUMER NAME
> UNABLE TO PERFORM TELEPHONE VALIDATION DUE TO
> INSUFFICIENT TELEPHONE INPUT

*Id.*

After receiving the credit report, Yaklin Ford proceeded with the transaction. Yaklin Ford sent the purchaser in Chicago the contract through United Parcel Service ("UPS") overnight service. Statement of Loss, Dkt. No. 35 at APP 21. The contract was delivered to the Chicago address listed on the driver's license on April 10, 2013. UPS delivery confirmation records show that an individual by the name of "Denrick"[1] signed for the delivery. For the Mercedes and for additional insurance, the purchaser ultimately received financing in the amount of $72,103.84. Dkt. No. 35 at APP 18. The summary judgment evidence is unclear as to the amount that Yaklin Ford seeks to recover from Defendants.[2]

A delivery service picked up the car and both sets of keys from Yaklin Ford later in April. Throughout the transaction, the purchaser never appeared on dealership premises or met with a dealership employee in person. Rather, the entire process of sale was done through mail, fax, or the internet. Statement of Loss, Dkt. No. 35 at APP 21.

In May 2013, a police detective in Illinois and a U.S. Secret Service Agent contacted Yaklin Ford for information relating to the sale of the Mercedes. Police and agents investigating an identity fraud complaint filed by Scott Heidenreich identified Yaklin Ford as the seller of the Mercedes. *Id.* After becoming aware of the identity fraud investigations, Lana Gallatin ("Gallatin"), Comptroller of Yaklin

---

[1] American Road's briefing states that a person by the name of "Dendrick" signed for the delivery of the sales documents, but its attachment, the Statement of Loss, states that the name was "Denrick." *Compare* Dkt. No. 34 at APP 10 *with* Statement of Loss, Dkt. No. 35 at APP 21.
[2] American Road states in its Motion for Summary Judgment that Yaklin Ford is "seeking the full value of the denied claim in this lawsuit—$67,025.00." Dkt. No. 34 at 10 (citing Statement of Loss, Dkt. No. 35 at APP 21–22). However, the Statement of Loss states that "[t]he amount claimed under the above[-]numbered policy is $61,525.00 (less applicable deductible)." Statement of Loss, Dkt. No. 35 at APP 22. Yaklin Ford's complaint does not specify, either. *See generally* Compl.

Ford, contacted Scott Heidenreich. She reached Heidenreich at a telephone number different from the one that Yaklin Ford had previously used to contact the Mercedes purchaser. *Id.* at APP 22. Heidenreich stated that he had never before contacted the Yaklin Ford dealership, nor had he purchased the used Mercedes. Following this conversation, Yaklin Ford contacted Ford Motor Credit and American Road.

The Mercedes was subject to a lien through the Ford Motor Credit. Dkt. No. 29 at 6. American Road Insurance Company had also issued a "floor plan" policy to Ford Motor Credit under policy number 71-3108-21-01 (hereinafter the "American Road Policy."). *Id.* The Mercedes was insured by the American Road Policy. Additionally, UUIC issued to Yaklin Ford a Unicover policy number 322888 for the policy period of January 1, 2013 to January 1, 2014 ("UUIC Policy"). *Id.*

Yaklin Ford reimbursed Ford Motor Credit for the funds Ford Motor Credit had advanced for the Mercedes purchase. Dkt. No. 45 at ¶ 35. On May 31, 2013, Yaklin Ford submitted a claim to American Road seeking coverage for the loss under a part of the contract called the False Pretense Endorsement. *Id.* at ¶ 36. Yaklin Ford pays additional premiums for this endorsement. *Id.* This endorsement applies "[w]here Dealer voluntarily parts with the Financed Vehicle where false identification is presented." False Pretense Endorsement, Dkt. No. 35 at APP 16. On July 31, 2013, Gallatin submitted the Statement of Loss Statement to American Road in support of its claim for $61,525 less the $500 deductible. Dkt. No. 35 at APP 32; *see also* Dkt. No. 1-8 at 2. On August 1, 2013, American Road denied coverage based on Yaklin Ford's failure to meet the express conditions precedent in the False Pretense Endorsement. A letter from American Road to Yaklin Ford dated August 1, 2013 reads:

> The dealer did not meet the policy conditions precedent to coverage by showing evidence that reasonable and adequate care was taken to confirm the identity of the individual(s) that purchased or took delivery of the vehicle as outlined in the Auto Wholesale Policy and the Dealer manual. Also, the dealer did not satisfy one or more of the coverage conditions as there is no proof or verification of false identification or fraudulent check, or fraudulent title.

Dkt. No. 35 at APP 32. Yaklin Ford also made a claim for its loss with UUIC. UUIC determined that Yaklin Ford does not have insurance for the Mercedez Benz. Compl. at 3. American Road alleges that Yaklin was able to recover and resell the fraudulently purchased Mercedes, and attaches unobjected-to evidence indicating that Yaklin Ford resold the Mercedes for $38,110.00. Dkt. No 35-1 at APP 43.[3]

Yaklin Ford brings a contract claim against Defendants, alleging that Defendants (1) failed to properly and promptly investigate, estimate, and pay Yaklin Ford's claim in full for covered property damage; (2) failed and refused to pay Yaklin Ford a just amount in accordance with its contractual obligations, agreements, and representations; (3) and breached the insurance contract with Yaklin Ford. Compl. at 4. Yaklin Ford also brings claims under the Texas Insurance Code, *see* V.T.C.A., Insurance Code § 541.001, the Texas Deceptive Trade Practices Act ("DTPA"), *see* V.T.C.A., Bus. & C. § 17.50, the Texas Administrative Code, *see* 28 T.A.C. § 21.203, and common law for breach of covenant of good faith and fair dealing, unconscionability, unfair settlement practices, and fraud. Compl. at 5–8. Yaklin Ford filed this suit in the 105th District Court of Kleburg County, Texas on July 30, 2015. Dkt. No. 21-1 at 6–7. American Road removed the case to the Southern District of Texas based on diversity jurisdiction in September 2015. Dkt. No. 34 at 6; Dkt. No. 21-1 at 10.

Under the American Road Policy, Yaklin Ford has Comprehensive, Blanket Collision, and False Pretense coverage. *See* American Road Policy, Dkt. No. 35, at 1. Yaklin Ford and American Road dispute (1) whether Yaklin Ford is covered under the False Pretense Endorsement and (2) whether Yaklin Ford's loss qualifies for coverage under the Comprehensive Coverage theft provision. *See* Dkt. No. 34 at 13; Dkt. No. 45 at 15–16.

---

[3] The evidence provided does not indicate on what date the 2012 Mercedes Benz was sold. *See* Dkt. No 35-1 at APP 43.

## II.  Legal Standard

### A.  Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when the court concludes "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this inquiry, a court considers the record and other documents that could be admissible as evidence under Fed. R. Civ. P. 56(c).[4]

The court must view all evidence in the light most favorable to the non-moving party. *Piazza's Seafood World*, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-movant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "When assessing whether a dispute to any material fact exists, [courts] consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

---

[4] Yaklin Ford argues that the Court must follow the "Eight Corners" rule and look at only the pleadings and the contract. However, in Texas, the "Eight Corners" rule applies only when the issue before the court is an insurer's duty to defend against a third-party lawsuit. *See, e.g.*, *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 132–33 (Tex. 2010) ("An insurer's duty to defend is determined under the eight-corners doctrine, while the duty to indemnify is determined by the facts as they are established in the underlying suit."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) ("If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. . . . An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. . . . This is sometimes referred to as the 'eight corners' rule.") (internal citations omitted); *See e.g. Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007).

"Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex*, 477 U.S. at 325). The non-movant may not merely rely on conclusory allegations or the pleadings. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). The non-movant's burden is not satisfied by "conclusory allegations," "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotations and citations omitted). Courts are not required to search the record on the non-movant's behalf for evidence that may raise a fact issue. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

B.    <u>Interpretation of Insurance Policies</u>

In diversity cases, Texas law of contract interpretation applies. *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 552 (5th Cir. 2016). Whether a contract is ambiguous is itself a question of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Under Texas law, "[a]n insurance policy is a contract, generally governed by the same rules of construction as all other contracts." *RSUI Indem. Co. v. The Lynd Co.* (hereinafter "*Lynd*")*, 466 S.W.3d 113, 119 (Tex. 2015) reh'g denied* (Sept. 11, 2015) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)); *see also Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997). ("A contract is unambiguous as a matter of law if it can be given a definite or certain legal meaning.") (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

"If only one party's construction is reasonable, the policy is unambiguous and [the court] will adopt that party's construction. . . . But if both constructions present reasonable interpretations of the policy's language, [the court] must conclude that the policy is ambiguous." *Lynd*, 466 S.W.3d at 118 (citing *Grain Dealers*, 943 S.W.2d at 458.) "In that event, '[the court] must resolve the uncertainty by adopting the

construction that most favors the insured . . . .' "). *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (quoting *Lynd*, 466 S.W.3d at 119) (internal quotations and citations omitted); *see also* Lyndon F. Bittle, *Interpreting Insurance Policies in Texas: It's Not That Hard*, 72 The Advoc. (Texas) 62, 62. ("The consequence of finding ambiguity distinguishes insurance policies from other contracts in Texas.") (citing *State Farm Fire & Cos. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998)). " 'This widely followed rule is an outgrowth of the general principle that uncertain contractual language is construed against the party selecting that language,' and is 'justified by the special relationship between insurers and insureds arising from the parties' unequal bargaining power.' " *Lynd*, 466 S.W.3d at 119 (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 n.1 (Tex. 1998)). Thus, if both Yaklin Ford and American Road offer reasonable interpretations, this Court must decide between the two reasonable interpretations in favor of Yaklin Ford as a matter of law. *See id.*

"In contract law, the terms 'ambiguous' and 'ambiguity' have a more specific meaning than merely denoting a lack of clarity in language." *Id.* "A contract is unambiguous if it is can be given a certain or definite legal meaning or interpretation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 519 (Tex. 1995) (internal citations omitted); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). A contract is not ambiguous simply because the parties offer conflicting interpretations. *Lynd*, 466 S.W.3d at 119 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 157 (Tex. 2003)). "[A] contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Lynd*, 466 S.W.3d at 119 (quoting *Universal C.I.T. Credit Corp. v. Daniel,* 243 S.W.2d 154, 157 (Tex. 1951)); *see also Balandran*, 972 S.W.2d at 741. "Thus, a contract is ambiguous only if, after applying the rules of construction, it remains 'subject to two or more reasonable interpretations.' " *Lynd*, 466 S.W.3d at 119 (quoting *Balandran*, 972 S.W.2d at 741). In evaluating ambiguity, the court is not bound by the determinations of either party. *See Coker*, 650 S.W.2d at 393.

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Nat'l Union Fire Ins. Co.,* 907 S.W.2d at 520 (internal citations omitted).

The ambiguity inquiry begins with the text of the policy itself. *See Gilbert Texas Const., L.P.*, 327 S.W.3d at 126 ("First, we look at the language of the policy because we presume parties intend what the words of their contract say."). An insurance policy generally includes the related endorsements, which when validly made merge with the original policy to form one contract. *El-Habr v. Mountain States Mut. Cas. Co.*, 626 S.W.2d 171, 172 (Tex. App. 1981, writ ref'd n.r.e.).

In interpreting and construing a contract, a court's primary goal is to ascertain the intentions of the parties as expressed in the contract. *Reilly v. Rangers Management,* 727 S.W. 2d 527, 529 (Tex. 1987). Unless the policy dictates otherwise, the court is to "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *Lynd*, 466 S.W.3d at 118. Terms that are not defined in a policy are given their generally accepted or commonly understood meaning. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). In insurance disputes, the legal meanings of terms can also be considered. *See Nassar*, 508 S.W.3d at 258.

In construing a contract, the court must strive to give meaning to all the language. *Chadwick v. Esperanza Trade & Transport, Ltd.,* 548 F.2d 1161, 1162 (5th Cir. 1977). "[A]ll provisions must be considered with reference to the entire instrument in order to insure that each provision is interpreted in harmony with the true intentions of the parties as expressed by the whole contract." *Coker,* 650 S.W.2d at 393; *see also State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995) ("[Courts] must read all parts of a contract together. . . . Indeed, courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract.") (internal citations omitted). The court cannot look at one provision in a contract in isolation,

but rather must look at each provision as it relates to the entire agreement. *Myers v. Gulf Coast Minerals Management Corp.,* 361 S.W.2d 193, 196 (Tex. 1962).

"While parol evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Balandran*, 972 S.W.2d at 741 (Tex. 1998) (internal citations omitted) (citing *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589; *National Union Fire Ins. Co.*, 907 S.W.2d at 520); *see also Hettig & Co. v. Union Mut. Life Ins. Co.*, 781 F.2d 1141, 1143 (5th Cir. 1986) ("[T]he court must examine the wording of the contract in the light of circumstances existing at the time of the contract's making, excluding statements of the parties as to what they intended.") (citing *Vendig v. Traylor*, 604 S.W.2d 424, 427 (Tex. App. 1980, writ ref'd n.r.e.)). If, after applying these rules, a contract is subject to two or more reasonable interpretations, it is ambiguous. *Balandran*, 972 S.W.2d at 741; *c.f. Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 519 ("We agree with the trial court that the provisions unambiguously apply under the circumstances presented.").

### III.   American Road's Motion for Summary Judgment

American Road moves for summary judgment on all of Yaklin Ford's claims against it. Because UUIC's summary judgment motion is dependent at least in part on the outcome of Yaklin Ford's breach of contract claim against American Road, the Court will first consider American Road's motion for summary judgment.

A.   <u>Breach of Contract under False Pretense Endorsement</u>

Yaklin Ford contends that it was entitled to coverage under the American Road Policy's False Pretense coverage, and that American Road wrongfully denied coverage. Compl. at 3. American Road responds that its denial was proper because Yaklin Ford did not meet the conditions for coverage laid out in Article 2 of the False Pretense Endorsement. Dkt. No. 34 at 13–14. Article 2 of the Endorsement reads:

C. False Pretense Coverage:

1. Company will pay for Loss to an entire Financed Vehicle:

   a. *Where Dealer voluntarily parts with the Financed Vehicle where false identification is presented*;

   b. Where the Financed Vehicle is delivered in exchange for a Fraudulent Check;

   c. Where Dealer accepts a trade-in vehicle from an individual or individuals with a Fraudulent Title provided that the Financed Vehicle purchased from Dealer by the individual(s) is insured under the terms and conditions of this Policy;

subject to the conditions precedent set forth in subparagraph 2 below.

2. As conditions precedent to coverage hereunder, Dealer must have:

   a. *Recorded (or copied, if state law permits) the individual's(s) driver license*, or

   b. Otherwise shown evidence that reasonable and adequate care was taken to verify identification of such individual(s) as to name, address, telephone number and employment, and

   c. Filed a police report and assisted in the recovery of the Financed Vehicle and prosecution of the individual(s) responsible for the Loss.

   d. Reported the Loss to Company within one hundred eighty business days (180) after the individual(s) take(s) possession of the vehicle whether or not financing has been approved.

False Pretense Endorsement, Dkt. No. 35 at APP 41–42 (emphasis added). Under the insurance contract, "False Identification" is defined as "identification of an individual that is not true, correct and representative of the bearer." American Road Policy, Dkt. No. 35 at APP 4.

American Road argues that Yaklin Ford did not comply with the False Pretense Endorsement provisions C(1)(a) or with either of the express conditions precedent contained in C(2)(a) and C(2)(b). The parties do not dispute that in order for Yaklin Ford to recover under the False Pretense Endorsement, it must have met

condition C(1)(a) because Yaklin Ford's loss did not involve a fraudulent check or fraudulent title. *See* Dkt. No. 34 at 13; Dkt. No. 35-1 at APP 32.

The relevant question before this Court is whether Yaklin Ford has offered a reasonable interpretation of the terms in dispute. *See Lynd*, 466 S.W.3d at 119 ("[A] contract is ambiguous only if, after applying the rules of construction, it remains 'subject to two or more reasonable interpretations.' " *Lynd*, 466 S.W.3d at 119 (quoting *Balandran*, 972 S.W.2d at 741)). The interpretation disputes in this case concern what the verbs "presented" and "recorded" mean in the policy. These terms are not defined in the False Pretense Endorsement. In order to qualify for coverage, Yaklin Ford must provide a reasonable interpretation for each term. *See Lynd*, 466 S.W.3d at 118 ("[W]e must resolve the uncertainty by adopting the construction that most favors the insured . . . .") (quoting *Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555).

According to American Road, Yaklin Ford did not comply with provision C(1)(a) because "False Identification" was not "presented" during the fraudulent purchase. Dkt. No. 34 at ¶54. American Road contends that "[f]axing a copy of a driver's license is not 'presenting' identification, and a dealership in a remote transaction cannot verify that a faxed copy of a driver's license is representative of the bearer." *Id.* Essentially, American Road argues that the contract term "present" means in-person presentment. Dkt. No. 34 at ¶¶ 49–50.

American Road does not cite to any dictionary or other authority for its interpretation of "presented." In support of its interpretations of "presented" and "recorded," American Road argues that "[f]or the same reasons why a facsimile of a driver's license would not pass airport security or satisfy the requirement that a person present a valid driver's license to an officer in a traffic stop, it does not constitute an actual driver's license under the Endorsement." Dkt. No. 48 at 5. The context of law enforcement is significantly different from that of business contracts, and American Road has not provided any evidence that "presented" or "recorded" signify in-person identification in the trade usage of the auto insurance industry. The Court, therefore, declines to find that these examples are sufficiently analogous

to render the verbs "presented" and "recorded" unambiguous within the context of the insurance dispute.

American Road also argues that the American Road Policy's definition of "False Identification" demonstrates that the Policy requires in-person presentment. American Road argues that the terms " 'presented' and 'bearer' are significant, and there is no way a dealer can know whether a facsimile of a driver's license from someone it has never met is representative of the bearer." Dkt. No. 48 at 5 (quoting American Road Policy, Dkt. No. 35 at APP 4). However, the American Road Policy does not define "False Identification" from the perspective of a dealer at the time of the transaction. Rather, "False identification" is defined objectively, and could encompass *post hoc* realizations that the faxed or electronic photo identification is indeed "not true, correct and representative of the bearer."

American Road also offers a Ford Dealership Manual dated March 2012. Dkt. No. 35-1 at APP 34–42. American Road argues that this Manual reemphasizes the conditions precedent because of its language that states:

> Dealers are required to exercise good judgment and take reasonable precautions before relinquishing possession of a covered vehicle. Specific conditions to coverage require a Dealer at a minimum to:
>
> • Record from the individual's driver license (or photocopy if state law permits) the following information: driver license number, name[,] address, city, state, ZIP code, date of birth and expiration date, or otherwise show evidence that reasonable and adequate care was taken to confirm the identity of the individual(s) by verifying the name, address, telephone number and employment furnished by the individual(s).

Ford Dealership Manual, Dkt. No. 35 at APP 37.

The parties dispute whether the Ford Dealership Manual constitutes permissible evidence for contract interpretation. The Court declines to rule on this issue; even if the Manual is considered, its plain language is unhelpful in determining the meaning of the terms "recorded" and "presented" because it simply tracks the language at issue in the False Pretense Endorsement.

American Road further asserts that Yaklin Ford did not meet either condition precedent C(2)(a) or C(2)(b) in the False Pretense Endorsement. Dkt. No. 34 at ¶¶ 53–57. For the same reasons that American Road argues that Yaklin Ford did not meet condition C(1)(a)—because Yaklin Ford only ever received a faxed copy of a driver's license, American Road argues that it cannot meet condition C(2)(a). Moreover, American Road argues that Yaklin Ford also did not take "reasonable and adequate care" in verifying identification so as to meet condition C(2)(b) because it proceeded with the transaction despite the discrepancies in the fraudulent purchaser's applications, the warning flags raised in the credit report, and the lack of references, lack of information about the applicant's employment history, and incomplete current employer information. Dkt. No. 34 at ¶¶ 56–57.

Yaklin Ford responds to American Road's Motion for Summary Judgment with two main arguments. First, it points out that American Road did not define or otherwise state anywhere in the policy that presenting identification means presenting identification "in person" or that dealers are required to record the physical identification. Dkt. No. 45 at ¶¶ 38–39. Second, Yaklin Ford draws on the surrounding circumstances—particularly the relationship between Ford Motor Credit and American Road—to argue that the terms "presented" and "recorded" in the False Pretense Endorsement encompass online transactions.

> Yaklin is an authorized Ford dealer. As an authorized Ford dealer, Yaklin sells cars manufactured by Ford Motor Company. Ford Motor Company, through its wholly owned subsidiary Ford Motor Credit . . . , provides credit to authorized purchasers to purchase Ford vehicles through Yaklin. Ford Motor Company makes available various insurance coverage through its wholly owned subsidiary, American Road Insurance Company [which] . . . . adjusts claims for Ford. In order to assist dealers in selling motor vehicles through remote internet transactions, Ford makes available the RouteOne system which enables potential customers to apply for loans and purchase vehicles over the internet. RouteOne is owned in part by Ford Motor

Credit, along with various other automobile financiers or manufacturers.[5]

* * *

Thus, in sum, the related companies of Ford Motor Company, Ford Motor Credit, and American Road have received extra premiums for coverage of a loss which occurred within the policy for which Yaklin had to repay, and for which Ford Motor Credit approved financing and which Ford's subsidiary, American Road[,] is now denying said claim.

Dkt. No. 45 at ¶¶ 33–37.

Yaklin Ford argues that given the knowledge that Yaklin Ford sold cars through online transactions, American Road should have specified that the contract required identification to be "presented" and "recorded" "in person" if that is what it meant. Dkt. No. 45 at ¶ 40. ("Had American Road been concerned about insuring losses in E-Commerce transactions, it could have simply added the phrase 'must take physical copy of the driver[']s license in hand.' "). Yaklin Ford urges the Court to adopt its view that "present" includes situations where facsimiles of identification are received by the dealer. Dkt. No. 45 at ¶38.[6]

Yaklin Ford need only satisfy C(2)(a) or C(2)(b) to fulfill the conditions precedent of the False Pretense coverage. *See* False Pretense Endorsement, Dkt. No. 35 at APP 16–17 (using the term "or" between (C)(2)(a) and (C)(2)(b)). The Court first turns to the dictionary definitions of "presented" and "recorded" for their ordinary meaning. *See Lamar Homes*, 242 S.W.3d at 8 ("Terms that are not defined in a policy are given their generally accepted or commonly understood meaning."). The dictionary definitions for the verb "present" include: "to bring or introduce into the presence of someone esp. of superior rank or status"; "to introduce socially"; "to make a gift to"; "to give or bestow formally"; "to law (as a charge) before a court as

---

[5] The Court notes that Yaklin Ford does not cite to any summary judgment evidence for these allegations, and American Road does not dispute Yaklin Ford's characterization of the relationships involved between parties. *See generally* Dkt. No. 48.

[6] The Court notes that the timeline of the contract formation and Yaklin Ford's use of RouteOne is not clear from the summary judgment briefings. The American Road Policy indicates that it provides coverage for April 1, 2012 to "continuous until canceled." American Road Policy, Dkt. No. 35 at APP 1. The briefings do not indicate at what point Yaklin Ford began to use the RouteOne software, though the Court notes that the transaction in question occurred in April 2013, after the formation of the contract.

an object of inquiry"; "to bring a formal public charge, indictment, or presentment against"; "to offer to view"; and "to bring one's attention to." *Present (vb)*, *Merriam-Webster's Collegiate Dictionary* 982 (Frederick C. Mish et al. eds., 11th ed. 2003). Based on this definition, a person bearing false identification could present that identification to the dealer in person or by otherwise offering the identification to the dealer's view.[7]

Black's Law Dictionary does not define the verb "present." Rather, it defines only the adjective. *See Present*, BLACK'S LAW DICTIONARY (10th ed. 2014). Black's Law Dictionary does define "presentment" as:

> 1. The act of presenting or laying before a court or other tribunal a formal statement about a matter to be dealt with legally. 2. *Criminal procedure*. A formal written accusation returned by a grand jury on its own initiative, without a prosecutor's previous indictment request. . . . 3. The formal production of a negotiable instrument for acceptance or payment; esp., a demand for acceptance or payment made on the maker, acceptor, drawee, or other payor by or on behalf of the holder. . . .

*Presentment*, BLACK'S LAW DICTIONARY (10th ed. 2014). Because "presentment" is defined only in contexts that do not apply to this case, such as the criminal procedure and commercial paper law contexts, those definitions are not dispositive of its meaning in this insurance contract.

The dictionary definition of the verb "record" also suggests ambiguity as to the meaning of "recorded" within the conditions precedent of the False Pretense Endorsement. Merriam-Webster's dictionary states that "record" means"

> 1a(1): to set down in writing: furnish written evidence of (2) to deposit an authentic official copy of <~a deed> b: to state for or as if for the record <voted in favor but ~*ed* certain reservations> c(1): to register permanently by mechanical means <earthquake shocks ~*ed* by a seismograph> (2) INDICATE, READ <the thermometer ~*ed* 90° > 2: to give evidence of[;] 3 to cause (as sound, visual images, or data) to be

---

[7] Merriam-Webster's dictionary definition of "presentment" includes "1: the act of presenting to an authority a formal statement of a matter to be dealt with, *specif*: the notice taken or statement made by a grand jury . . . [,] 2: the act of offering at the proper time and place a document (as a bill of exchange) that calls for acceptance or payment by another[,] 3a: the act of presenting to view or consciousness[,] b: something set forth, presented, or exhibited, [c] the aspect in which something is presented." *See Presentment (n)*, *Merriam-Webster's Collegiate Dictionary* 982 (Frederick C. Mish et al. eds., 11th ed. 2003).

> registered on something (as a disc or magnetic tape) in reproducible
> form.

*Record (vb), Merriam-Webster's Collegiate Dictionary* 1040 (Frederick C. Mish et al. eds., 11th ed. 2003). Because terms that are not defined in a policy are given their generally accepted or commonly understood meaning, *Lamar Homes*, 242 S.W. at 8, and the dictionary definition of "record" appears to encompass situations in which "an authentic official copy" is required but also where electronic communications suffice "to cause (as sound, visual images, or data) to be registered on something," the Court finds that both Yaklin Ford's and American Road's/UUIC's interpretations of the term are reasonable.

The legal definition of "record" provides no further clarification. *See* RECORD, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Nassar*, 508 S.W. at 258 ("In insurance disputes, the legal meanings of terms can also be considered.*")*. Black's Law Dictionary defines "record" as: "[t]o deposit (an original or authentic official copy of a document) with an authority <she recorded the deed in the county property office>." *See* RECORD, BLACK'S LAW DICTIONARY (10th ed. 2014). Because the legal definition appears to concern the recording of official documents with an authority, such as in the context of a deed, which is not applicable here, it does not establish an unambiguous meaning for the purposes of interpreting "recorded" in the context of C(2)(A).[8]  Given that the ordinary meaning and the legal meaning of these terms leaves them "subject to two or more reasonable interpretations," *see Lynd*, 466 S.W.3d at 119 (quoting *Balandran*, 972 S.W.2d at 741), the Court cannot find that either term is unambiguous.[9]

---

[8] Additionally, Black's Law Dictionary does not offer a definition of "recorded," which is the actual language of the False Pretense Endorsement; this distinction is important because, as described *supra*, according to Merriam-Webster's, "recorded" may reasonably be understood to mean to "register permanently" or "to give evidence of." *See Record (vb), Merriam-Webster's Collegiate Dictionary* 1040 (Frederick C. Mish et al. eds., 11th ed. 2003).

[9] In asserting their respective interpretations, both parties argue that the terms "present" and "record" are unambiguous. *See, e.g.*, Dkt. No. 45 at ¶19. The Court disagrees with Yaklin Ford's contention that the terms are unambiguous in covering electronic and faxed identifications, but notes that Yaklin Ford need only to show that the terms are ambiguous to prevail.

The Court turns to the rest of the contract to insure that the provisions in question are "interpreted in harmony with the true intentions of the parties as expressed by the whole contract." *Coker,* 650 S.W.2d at 393. While American Road did not bring this to the Court's attention, the Court notes that the American Road Policy's Comprehensive Coverage section covers loss to a financed vehicle arising a variety of instances included "theft and/or conversion of an entire Financed Vehicle by any individual(s) on a Demonstration Ride where identification was presented which was not False Identification"—language similar to that used in the False Pretense Endorsement.[10] *See* American Road Policy, Dkt. No. 35 at APP 5–6. In the Comprehensive Coverage section, the phrases "presented" and "recorded" appear in the context of describing conditions for when the American Road Policy covers theft and/or conversion of a vehicle on a demonstration ride.

"Generally, the law recognizes 'a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.'" *Lynd*, 466 S.W.3d at 126 (citing *Atl. Cleaners & Dyers v. United States,* 286 U.S. 427, 433 (1932)). But this presumption "is not rigid," and it "readily yields" when the text uses the words in such various connections that it "warrant[s] the conclusion that they were employed in different parts of the act with different intent." *Id*.

In the context of demonstration rides, the term "presented" and "recorded" may be presumed to be associated with in-person presentment of identification

---

[10] The American Road Policy indicates that Comprehensive Coverage is provided for
> theft and/or conversion of an entire Financed Vehicle by any individual(s) on a Demonstration Ride where *identification was presented* which was not False Identification (coverage where False Identification was presented is provided by the False Pretense Endorsement) provided that the Dealer has:
> > (1) *recorded (or copied, if state law permits) the individual's(s) driver license*, or
> > (2) otherwise shown evidence that reasonable and adequate care was taken to verify identification of such individual(s) as to name, address, telephone number and employment, and
> > (3) filed a police report and assisted in the recovery of the Financed Vehicle and prosecution of the individual(s) responsible for the Loss.
American Road Policy, Dkt. No. 35 at APP 5–6.

because the demonstrate ride necessarily requires the physical presence of a driver. A review of the whole contract could, therefore, weigh in favor of American Road's interpretation of "presented" and "recorded."

However, courts are called upon to "construe the terms of the policy as a whole, and consider all of its terms, not in isolation, but within the context of the policy." *Lambrecht & Associates, Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 21 (Tex. App. 2003, no pet.) (citations omitted). This Court therefore gives due consideration to the different contexts in which the terms "presented" and "recorded" appear, and notes that simply because in-person presentment may be presumed in the demonstration ride context does not mean that such in-person presentment is required in the array of scenarios contemplated by the False Pretense Endorsement. Furthermore, American Road does not prevail if it shows that its interpretation is *more* reasonable; rather American Road must show that its interpretation is the *only* reasonable interpretation, and there is no "genuine[ ] uncertain[ty] [about] which one of two or more meanings is the proper meaning." *See Lynd*, 466 S.W.3d at 119.

This Court may also look to other courts' interpretations of the disputed terms for guidance. However, the parties have not identified any cases defining or interpreting these terms, and the Court has not found any cases where the terms are interpreted in a relevant context. Consequently, the Court proceeds to examining the circumstances surrounding the formation of the insurance contract in order to determine whether only one interpretation of "presented" or "recorded" is reasonable. *See Hettig*, 781 F.2d at 1143 (stating that a court must examine the wording of the contract in the light of circumstances existing at the time of the contract's making, excluding statements of the parties as to what they intended).

The Court finds that the circumstances surrounding the contract's formation weigh in favor of finding the terms "presented" and "recorded" to be ambiguous. As a wholly owned subsidiary of Ford Motor Credit, American Road had reason to know that Yaklin Ford was engaging in online transactions when Yaklin Ford executed the sale in April 2013. American Road did not seek to clarify the terms of

the contract to define "presented" and "recorded" to mean in-person identification at that time or at any time beforehand when Yaklin Ford began using RouteOne. Furthermore, American Road has not pointed to another provision in Yaklin Ford's insurance contract or another insurance policy that it offers that does cover remote transactions. Thus, the Court finds the circumstances surrounding the contract weigh in favor of finding the terms "presented" and "recorded" to be ambiguous because American Road—knowing that Yaklin Ford was conducting transactions through RouteOne—could have explicitly stated its intended meaning in order to specify that online transactions where the identification was not available in person were not included in the endorsement. *C.f. Natl. Union Fire Ins. Co., Inc.*, 811 S.W.2d at 555 ("An intent to exclude coverage must be expressed in clear and unambiguous language. National Union knew that the plane had dual controls [thus allowing for simultaneous piloting]. If National Union wanted to exclude simultaneous piloting from the scope of coverage, then it was incumbent upon it to expressly and clearly state the exclusion in the policy. Having failed to do so, National Union cannot now complain.").[11] Consequently, the American Road Policy insurance contract is ambiguous, and Yaklin Ford's interpretation prevails as a matter of law.

B.    Breach of Contract under Comprehensive Coverage Theft Provision

The parties also dispute whether Yaklin Ford has coverage for theft under the American Road Policy's Comprehensive Coverage section. The American Road Policy states that American Road will pay for loss of a financed vehicle arising from "theft." *See* American Road Policy, Dkt. No. 35 at APP 5.

---

[11] The Court notes that *National Union Fire Insurance Company of Pittsburgh, Pa. v. Hudson Energy Company, Inc.*, 811 S.W.2d 552 (Tex. 1991), is a case concerning the construction of an exclusionary clause. *See id.* at 555. Yet the rule concerning exclusionary clauses that "[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent," *see id.*, mirrors the rule concerning contract of insurance generally, *see id.* ("[I]f a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured."); *see also Nassar*, 508 S.W.3d at 258; *Lynd*, 466 S.W.3d at 119.

American Road argues that the "theft" provision is inapplicable because Yaklin Ford "voluntarily parted with the vehicle" during the fraudulent purchase. Dkt. No. 34 at ¶ 50. Theft, American Road argues, "involves the dealer's involuntary or non-consensual parting with a vehicle," which does not describe Yaklin Ford's present loss. *Id.* at ¶ 49. Yaklin Ford disagrees and offers its own interpretation of "theft," based on the Texas Penal Code. Dkt. No. 45 at ¶¶ 46–47 ("Theft is the unlawful appropriation of property with the intent to deprive the owner of property. The appropriation of property is unlawful if it is without the owner[']s *effective consent.*") (emphasis in original) (citing Tex. Pen. Code § 31.03(b)(1)).

In reading the insurance policy and its endorsements so as to give effect to the whole, the Court agrees with American Road that the fraudulent purchase of the Mercedes was not a theft. The Comprehensive Coverage section covers losses from theft. *See* American Road Policy, Dkt. No. 35 at APP 5 (theft is listed under Article 2.1.A.1.e.). This provision has no conditions precedent, as Yaklin Ford points out. Dkt. No. 35 at ¶ 47. Yaklin Ford pays extra premiums for a False Pretense Endorsement, which does have conditions precedent. *See* False Pretense Endorsement, Dkt. No. 35 at APP 16–17. The False Pretense Endorsement applies to situations involving, generally, losses due to fraudulent inducement, i.e., fraudulent checks, fraudulent title, and fraudulent identification. *Id.* at APP 16. The first situation which the False Pretense Endorsement potentially provides coverage for is "where Dealer voluntarily parts with the Financed Vehicle where Fraudulent Identification is presented." *Id.* Yaklin Ford argues that under the American Road Policy's Comprehensive Coverage section, theft includes situations where the dealer voluntarily parts with the vehicle as well as when it involuntarily parts with the vehicle. Dkt. No. 45 at ¶ 46.

Yaklin Ford's proffered meaning of "theft" would, however, render the False Pretense Endorsement meaningless, thus breaking a cardinal rule of contract construction. *See Gilbert Tex. Constr.*, 327 S.W.3d at 126 ("We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless."). If the Court were to accept Yaklin Ford's meaning, then the theft

provision of the Comprehensive Coverage section would cover all of the situations covered in the False Pretense Endorsement C(1)(a)-(c), such as situations where the dealer was "induced by deception or coercion" to "voluntarily" parting with a vehicle. *See* False Pretense Endorsement, Dkt. No. 35 at APP 16.

Yaklin Ford would thus be paying extra premiums to receive no additional coverage. The Court declines to approve such an unreasonable interpretation and accordingly declines Yaklin Ford's offered meaning for "theft." American Road's offered meaning, where "theft" refers to "involuntary or non-consensual parting" and is covered by the Comprehensive Coverage section, is the only reasonable meaning out of the two meanings offered. Accordingly, the False Pretense Endorsement is the only provision in the policy that can potentially cover this situation, where Yaklin Ford voluntarily parted with a vehicle after receiving false identification.

Nevertheless, the Court finds that American Road's Motion for Summary Judgment, Dkt. No. 34, should be denied on the issue of breach of contract because the meanings of "presented" and "recorded" in the False Pretense Endorsement are ambiguous, and therefore Yaklin Ford prevails as a matter of law.

C.    Extra-Contractual Claims

Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997); *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). "A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham*, 103 F.3d at 459 (emphasis in original). "In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of

the claim." *Id.* (citing *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex. 1988)). "The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* (citing *State Farm Lloyds Inc. v. Polasek,* 847 S.W.2d 279, 284 (Tex. App. 1992, writ denied)). However, insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. *St. Paul Lloyd's Ins. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex. App. 1991, writ denied). "A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997) (citing *id.*). "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.* (citing *Lyons v. Millers Casualty Insurance Co.,* 866 S.W.2d 597, 600 (Tex. 1993)).

The Court agrees that Yaklin Ford has not raised a genuine issue of material fact on its extra-contractual claims under the Texas Insurance Code, DTPA, Texas Administrative Code, or common law. The summary judgment arguments and evidence show that a bona fide dispute existed, and that American Road had a reasonable basis for the actions that it took. As explained *supra*, the Court finds that the interpretations proffered by both American Road and Yaklin Ford are reasonable, and therefore the contract terms are ambiguous. The Court rejects Yaklin Ford's argument that the terms "recorded" and "presented" unambiguously cover electronic transactions.

"The Texas Insurance Code and the Deceptive Trade Practices Act are in large measure statutory fleshings-out of the already existing common law requirements." *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 951 (S.D. Tex. 2005) (quoting *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 162 (5th Cir.1994)). Claims under both statutes therefore "require the same predicate for recovering as do the bad faith causes of action." *Id.* (quoting *Lawson v. Potomac Ins. Co.*, No. CIV.A.3:98–CV–0692H, 1998 WL 641809, at *4 (N.D. Tex. Sept. 14, 1998)); *see also Tucker v. State Farm Fire & Cas. Co.*, 981

F.Supp. 461, 465 (S.D. Tex. 1997). ("[A] Plaintiff's extra-contractual claims live or die depending on whether Plaintiff's bad-faith claim has any viability.").

Because Yaklin Ford has not shown bad faith on the part of American Road, under applicable law, Yaklin Ford's extra-contractual claims under the Texas Insurance Code, the DTPA, and Texas Administrative Code cannot survive. The Court thus concludes that American Road's Motion for Summary Judgment, Dkt. No. 34, should be granted as to Yaklin Ford's extra-contractual claims against it.

In sum, for the aforementioned reasons, the Court finds that the American Road Policy False Pretense Endorsement is ambiguous and, therefore, the insured—Yaklin Ford—prevails as a matter of law. Therefore, American Road's Motion for Summary Judgment, Dkt. No. 34, should be denied as to Yaklin Ford's breach of contract cause of action. However, Yaklin Ford's common law, Texas Insurance Code, DTPA, and Texas Administrative Code extra-contractual claims should be denied as a matter of law. Therefore, American Road's Motion for Summary Judgment, Dkt. No. 34, should be granted as to Yaklin Ford's extra-contractual claims.

## IV.    UUIC's Motion for Summary Judgment

UUIC moves for summary judgment on all of Yaklin Ford's claims against it, arguing that because the American Road Policy is "a floor plan policy that specifically covers the 2012 Mercedes, Endorsement 74 of the UUIC Policy[,] which excludes losses for extended theft for automobiles that are insured by a 'floor plan' insurance policy[,] applies." Dkt. No. 29 at 1. According to UUIC:

> Under the plain and [un]ambiguous[12] language of Endorsement 74 in the UUIC Policy, there is no coverage for the 2012 Mercedes because the 2012 Mercedes was also insured by the American Road Policy. Because no coverage is available under the UUIC Policy for the 2012 Mercedes, UUIC did not: (1) breach the insurance contract; (2) fail to

---

[12] The original text, which appears in the Summary of the Argument section of UUIC's Motion for Summary Judgment, uses the term "ambiguous." *See* Dkt. No. 29 at 2. The Court assumes that UUIC meant to state "unambiguous" in because the rest of its Motion for Summary Judgment argues that Endorsement 74 is unambiguous. *See, e.g.*, Dkt. No. 29 at 14.

promptly pay the claim; (3) violate the Texas Insurance Code; (4) violate the Texas Deceptive Trade Practices Act; and/or (5) breach the duty of good faith and fair dealing.

Dkt. No. 29 at 2.

No party disputes that Yaklin Ford is an insured under both the American Road and UUIC Policy. *See* Dkt. No. 29 at 8.

UUIC Policy contains the following language under the heading "Auto Inventory Coverage Part 300":

> WE will pay for LOSS[13] of or to a COVERED AUTO[14] or COVERED WATERCRAFT located within the policy territory at the time of LOSS, from any cause, except as stated otherwise in the declarations or excluded, including sums an INSURED legally must pay as damages as a result of LOSS to a CUSTOMER'S AUTO or CUSTOMER'S WATERCRAFT.

UUIC Policy, Auto Inventory Coverage Part 300, Dkt. No. 30, Ex. A at APP 81.

The UUIC Policy also provides:

WE will not pay for LOSS:

* * *

E.    From EXTENDED THEFT

3.    due to incorrect information on any document related to a purchase, rental or lease transaction *except as covered under Part.1.c. of the definition of EXTENDED THEFT*.

* * *

5.    under Part 1.d. of the definition of EXTENDED THEFT, due solely to non-payment, for any reason, of any credit YOU extend. This includes bankruptcy, other insolvency proceedings or failure to honor post-dated checks.

---

[13] Words in all capitalization are defined in the Policy. When terms are defined in an insurance policy, those definitions are controlling. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003).

[14] "COVERED AUTO" is defined as an AUTO "1. Owned by or acquired by YOU; or 2. Not owned by YOU, but in YOUR care, custody, or control." UUIC Policy, Auto Inventory Coverage Part 300, Dkt. No. 30, Ex. A at APP 81.

UUIC Policy, Auto Inventory Coverage Part 300, Dkt. No. 30, Ex. A at APP 83–84 (emphasis added).

The UUIC Policy defines "EXTENDED THEFT," in part, as follows:

1.      YOUR voluntarily parting with evidence of title to or possession of a COVERED AUTO or COVERED WATERCRAFT when induced by:

      a.      a forged or counterfeit instrument received in payment.

      b.      a check or other instrument written on a closed account.

      c.      any document related to a purchase, rental or lease transaction on which the name, social security number or signature of the purchaser, rentee or lessee is false or forged.

      d.      any other criminal scheme, criminal trick or criminal device which induces YOU, at that time, to part with evidence of title to or possession of the COVERED AUTO or COVERED WATERCRAFT.

UUIC Policy, Auto Inventory Coverage Part 300, Dkt. No. 30, Ex. A at APP 82.

According to UUIC, because the claim concerns allegedly forged documentation (and/or a criminal scheme), the limited Extended Theft coverage would apply unless another exclusion applies. Dkt. No. 29 at 9. UUIC argues, however, that another exclusion applies through Endorsement 74. Endorsement 74 provides:

EXTENDED THEFT EXCLUDED ON
FLOOR PLAN INSURED AUTOS
COVERAGE PART 300

The coverage afforded for EXTENDED THEFT does not apply to AUTOS owned or acquired by YOU and insured by YOUR floor plan or finance source.

Endorsement 74, Dkt. No. 30, Ex. A at APP 00252.

UUIC argues that Endorsement 74 expressly excludes coverage for automobiles owned by Yaklin Ford and insured by a separate floor plan insurance source, such as the America Road Policy. UUIC further argues that the American Road Policy provided coverage to Yaklin Ford for the Mercedes through its insuring

agreement with Ford Motor Credit. Dkt. No. 29 at 5. UUIC argues that although American Road denied the claim, "the denial had nothing to do with the undisputed fact that the 2012 Mercedes was 'insured by' the American Road Policy" because American Road's denial was due to its belief that Yaklin Ford did not meet conditions precedent to coverage.

Yaklin Ford argues that because the UUIC Policy and the American Road policy both contain an "other insurance" exclusion clause, coverage exists under both policies. *See* Dkt. No. 33 at 2.[15] Yaklin Ford points to the below "other insurance" provision of American Road's policy:

> XV. <u>Other Insurance</u>
>
> A. This insurance is considered as excess insurance where other valid enforceable insurance exists in the name of or for benefit of the Named Insured or Dealer. This insurance shall not contribute to the payment of any Loss until other insurance sources have been exhausted.
>
> B. When this insurance and any other insurance provide coverage on the same excess basis, this insurance will pay only its pro rata share. The share of this insurance is the proportion that the Limit of insurance of this policy bears to the total of the limits of all of the policies providing coverage on the same basis.

*See* Dkt. No. 33 at 4 (quoting American Road Policy, Dkt. No. 30, Ex. B at APP 285). Yaklin Ford argues that the UUIC Endorsement No. 74 language, as excerpted *supra*, constitutes UUIC's "other insurance" clause. *Id.* at 5.

---

[15] Yaklin Ford argues that the Texas Supreme Court has held that in situations where there are two applicable policies with "other insurance" clauses, the competing clauses cancel each other. Dkt. No. 33 at 4 (discussing *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exchange*, 444 S.W.2d 583, 589–90 (Tex. 1969) ("A repugnancy between the policy provisions of two policies has usually been solved by ignoring the two offending provisions. The result is that Hardware's policy, minus its escape clause, covers the insured; Farmers' policy, minus its excess clause, covers the insured. The insured is thus insured by both insurers which is a reasonable result . . . .")). As Yaklin Ford points out, the Texas Supreme Court stated in *Hardware Dealers* that if the logic urged by the insurance companies were followed, it "would lead to a conclusion that the insured, though possessed of two policies, actually had none at all." *Hardware Dealers*, 444 S.W.2d at 589. Yaklin Ford argues that if UUIC's interpretation of the insurance policy is followed, Yaklin Ford "loses the benefit of the rule that requires construction of the policy strictly against the insurer, and liberally for the insured[,] and Yaklin [would have] no policy of insurance, although it purchased two policies." Dkt. No. 33 at 8.

UUIC replies that Yaklin Ford's "other insurance" analysis does not apply because (1) the "other insurance" issue applies between insurers and not between the insurer and an insured, and neither American Road nor UUIC assert that this case involves an "other insurance" issue;[16] (2) "other insurance" clauses only come into play between insurers where both insurers cover the same loss at the same level, i.e., overlapping coverage; and (3) Yaklin Ford's interpretation of the exclusion in the UUIC Policy in Endorsement No. 74 as an "other insurance" clause renders the UUIC Policy's "true 'other insurance' clause meaningless."[17] *See* Dkt. No. 37 at 1–2.

UUIC argues that Endorsement No. 74 is not an "other insurance" clause and, rather, Endorsement No. 74 is an exclusion. As UUIC states:

> [A]n "other insurance" clause defines which coverage is primary and which is excess between two policies that otherwise cover the loss as primary insurance. An "other insurance" clause does not have the same purpose as an exclusion.[18] The purpose of an exclusion in an insurance policy is to remove or exclude something from coverage that

---

[16] UUIC argues that *Hardware Dealers* is not applicable in this case because that case involved litigation between the two carriers where both policies included typical "other insurance" clauses and neither provision at issue in *Hardware Dealers* was an exclusion. Dkt. No. 37 at 6 (discussing *Hardware Dealers*, 444 S.W.2d at 585–86).

[17] UUIC argues that the actual "other insurance" clause in the UUIC Policy is contained in the Additional Conditions section, and reads:

    D.      Other Insurance

    This insurance is primary over any other insurance except it is excess:

    1.      when the COVERED AUTO or COVERED WATERCRAFT is in the care, custody, or control of any person or organization, other than YOU, a member of YOUR household, YOUR partner, director, stockholder, executive officer, or paid employee or a member of the household of any of them.

    2.      for any AUTO that is more specifically insured and:

        a.      owned by a manufacturer;
        b.      owned by YOU and used in connection with any leasing or rental operation for an AUTO manufacturer, its subsidiaries or affiliated companies.

Dkt. No. 37 at 4 (quoting Dkt. No. 30-1, Ex. A, APP 00090.

[18] UUIC cites to *Progressive Northern Insurance Company v. Hall*, 709 N.W. 2d 46, 52 (Wisc. 2006) for the proposition that an "other insurance" clause does not have the same purpose as an exclusion.

would otherwise have been covered. . . . Since the UUIC Policy does not afford coverage (by operation of exclusion Endorsement 74) and only the American Road Policy covers theft of floor planned or financed vehicles owned by Plaintiff, the "other insurance" clause in the UUIC Policy does not apply.

Dkt. No. 37 at 3–4.

The Court finds that Endorsement 74 is an exclusion clause that clearly and unambiguously excludes coverage for automobiles owned by Yaklin Ford and insured by a separate floor plan. The Court therefore concludes that UUIC's Motion for Summary Judgment, Dkt. No. 29, should be granted on Yaklin Ford's breach of contract claims against it.

Because the issue of coverage here is resolved in UUIC's favor, extra-contractual claims against UUIC do not survive. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive.). As this Court has noted, a key element of a bad faith claim is an absence of a reasonable basis for denying or delaying payment of benefits. *See also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (holding that Texas generally does not recognize a claim for bad faith when the insurer denies claim that is not covered under an insurance policy); *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (generally, common law bad faith claims as well as statutory bad faith claims are negated by the lack of coverage); *see also Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 818 (S.D. Tex. 2011) (statutory bad faith standard parallels the common law formulation). Because this Court holds that UUIC's denial of benefits was reasonable, the Court finds that UUIC's Motion for Summary Judgment, Dkt. No. 29, should be granted on Yaklin Ford's extra-contractual claims against it.

For the aforementioned reasons, the Court finds that Yaklin Ford does not have coverage under the UUIC Policy, and that Yaklin Ford's causes of action for breach of contract and extra-contractual violations of common law, Texas Insurance

Code, DTPA, and the Texas Administrative Code should be dismissed. Therefore, UUIC's Motion for Summary Judgment, Dkt. No. 29, should be granted in full.

## V. Conclusion

The Court finds that Yaklin Ford's insurance contract with American Road is ambiguous as to whether in-person presentment and recording of identification is required under the False Pretense Endorsement and, therefore, the contract must be construed in favor of the insured. The Court therefore **DENIES IN PART** American Road's Motion for Summary Judgment, Dkt. No. 34, on Yaklin Ford's breach of contract claim. The Court, however, **GRANTS IN PART** American Road's Motion for Summary Judgment, Dkt. No. 34, on Yaklin Ford's extra-contractual common law, Texas Insurance Code, DTPA, and Texas Administrative Code claims.

The Court also **GRANTS** in full UUIC's Motion for Summary Judgment, Dkt. No. 29.

Because under Texas law, the interpretation of insurance contracts is determined as a matter of law, *see Nassar*, 508 S.W.3d at 258; *Lynd*, 466 S.W.3d at 119, the Court:

- **DENIES AS MOOT** American Road's Opposed Motion for Extension of Time for Discovery, Dkt. No. 41;
- **DENIES AS MOOT** American Road's Motion to Exclude Plaintiff's Untimely Designated Expert Witness, Dkt. No. 68;
- **DENIES AS MOOT** UUIC's Motion for Joinder as to Motion to Exclude Plaintiff's Untimely Designated Expert Witness, Dkt. No. 70;
- **DENIES AS MOOT** Yaklin Ford's Motion for Leave to File Supplemental Response, Dkt. No. 76.

SIGNED this 4th day of August, 2017.

Hilda Tagle
Senior United States District Judge